Joseph F. Niki v. Commissioner.
Niki v. Commissioner
Docket No. 93577.
United States Tax Court
T.C. Memo 1963-133; 1963 Tax Ct. Memo LEXIS 210; 22 T.C.M. (CCH) 644; T.C.M. (RIA) 63133; May 16, 1963
Joe J. Yasaki for the petitioner. Robert H. Elliott, Jr., and Leslie M. Hartman for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioner for the taxable years 1957 and 1958 in the respective amounts of $698.49 and $727.73. The only issue to be decided is whether petitioner, during such years, was subject to the community property laws of the State of California. Findings of Fact The facts which have been stipulated are so found. Petitioner is a native-born citizen of the United States who filed individual income tax returns for the years 1957 and 1958 on a cash basis with the International Operations Division of the Internal Revenue Service in Washington, D.C.
Petitioner, who is of Japanese extraction, *211 was born in Salt Lake City, Utah, on November 13, 1913. He resided in Utah and Idaho from his birth until 1936 with the exception of three or four years during which he lived in Japan. In 1936, at the age of 23, he went to San Francisco, California, where he attended San Francisco Junior College. From 1937 to 1941 he attended various other colleges and universities in the State of California including Pasadena Junior College and the University of California at Los Angeles. On December 2, 1941, petitioner was inducted into the United States Army. At the time of his induction he lived at Los Angeles, California, and attended the University of California at Los Angeles. He was then registered with the draft board at Pasadena, California. During World War II, petitioner was stationed at various army posts in the continental United States and was given intelligence training in the Japanese language. In 1945 he was transferred to Manila, Philippine Islands. At the termination of hostilities with Japan, petitioner was assigned to the General Headquarters, United States Army at Tokyo, Japan. He arrived in Japan in September or October of 1945. Prior to his discharge from the United States *212 Army, petitioner applied for and received an appointment as a civilian employee of the United States assigned to the United States Army in Japan. He was discharged in Japan and immediately began work as a United States civil servant in that country. Subsequently, petitioner held various other United States civil service jobs in Japan and from the time of his discharge in 1946 until June 1962, he lived and worked for the United States in Japan. Various jobs held by petitioner were terminated and in each case he either applied for a different post in Japan or was automatically assigned to a different post in Japan. In 1950 petitioner married a nonresident alien who was then and is now a citizen of Japan. A son and daughter have been born of this union. Both were born in Tokyo, Japan. The children speak both Japanese and English. They read and write only English. Petitioner's wife has never left Japan. She has only a limited knowledge of the English language. Petitioner owns a home in Tokyo, Japan. The house was constructed in 1953 to an undisclosed extent with services and funds of the petitioner. Petitioner and his family have lived in this home since the completion of its *213 construction. Title to the property was originally recorded in the name of petitioner's brother-in-law but, in 1957, was transferred to petitioner upon the brother-in-law's default in the repayment of moneys borrowed from petitioner. On April 4, 1962, petitioner was transferred to a civil service job in San Francisco, California. Petitioner had not requested such a transfer and was somewhat displeased at being returned to the United States. Petitioner returned to the United States alone and at the time of his trial his wife and children continued to reside at petitioner's home in Japan. Prior to petitioner's actual departure from Japan, he requested reassignment to a post in Okinawa or Korea. Subsequent to his departure, he requested assignment to a post in Hawaii or in Japan. Petitioner preferred that he be allowed to return to Japan. For tax years prior to 1957, petitioner filed Federal income tax returns reporting his entire salary as income subject to tax. From 1951 until petitioner's departure from Japan, he maintained bank accounts at overseas branches of two United States banks and both savings and checking accounts in the Bank of America in San Francisco, California. *214 Ultimate Findings During the years 1957 and 1958, petitioner did not have a fixed or definite intention to return to California. During the years 1957 and 1958, petitioner did not intend to leave Japan at any definite time unless job opportunity so dictated. During the years 1957 and 1958, petitioner was domiciled in Japan. During the years 1957 and 1958, petitioner's income did not constitute community property under the laws of the State of California. Opinion If, as petitioner contends, he acquired a domicile in California prior to his induction into the armed services in 1941 and has never changed his domicile, his income from services rendered the United States in Japan while residing there during 1957 and 1958 would be community property under the laws of California and therefore only one-half thereof would be taxable to him. There is no dispute between the parties as to any issue, legal or factual, other than petitioner's domicile during those years. We think this record amply sustains respondent's determination that petitioner's domicile during the years at issue was Japan. We find no real distinction between the law of California and that of other jurisdictions *215 with respect to the principles governing a determination of an individual's domicile. We approach decision upon the definition enunciated by the Supreme Court in : Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile. * * * There can be and is no dispute here concerning the fact that during the 16 years following petitioner's discharge from the armed services his "residence in fact" has been in Japan. The only remaining factor necessary to determine his domicile is whether his purpose or intention during the years at issue was to make his place of residence his home. This is a question of fact to be decided upon the particular circumstances shown by this record. Petitioner's intention with respect to the establishment of his home we think became crystallized at or about the time of his discharge from the armed services while he was stationed in Japan. Prior thereto he had a floating intent with respect to the situs of his home. (C.A. 4). He then had a choice whether to live and work in Japan or elsewhere. *216 He chose Japan and on several occasions since, when his employment terminated, he had the same choice. In each instance he chose Japan. His reasons were clearly personal in nature based upon his choice of employment. The clearest expression by petitioner of his intention in this regard is contained in correspondence with respondent, dated March 1, 1962: My intention to remain in Japan is based strictly upon the employment opportunity with the U.S. Forces, and whenever I have the opportunity to better myself by returning to the U.S., in employment with the U.S. Government, or remaining in Japan in employment with the U.S. Government, I shall take what I consider to be the best opportunity. Of course, my primary desire would be to live in California, where I have voting rights, but if conditions of employment were such that I would have to be employed in another State, I would naturally go where I could be most profitably employed, but would retain my residence in California. We note that petitioner's attitude with respect to the fact that at the time of the hearing of this case he had been transferred to the United States by his employer was one of unwillingness although so far *217 as the record shows his job opportunity and presumably his compensation remained the same as in Japan. Coupled with this is the fact that, while en route to the United States and after arriving in this country, petitioner made application for transfer to various locations in the western Pacific, but preferably Japan. We think his actions are entirely consistent with the fact that he had made his home in Japan. Whether or not he had ever acquired a domicile in California prior to 1941, we think it is clear from this record that he changed his domicile to Japan at the time of his discharge from the armed forces. Petitioner's contentions, based upon the various provisions of the law, both Federal and State, which provide generally that one employed by the United States away from his domicile for any period does not thereby lose his domicile, are not well grounded. Such provisions have no application here for they merely protect domiciliary rights where one has the intention to retain them while here the issue turns upon petitioner's claimed intention to establish his domicile elsewhere than where it is claimed he has established an original domicile. These laws certainly protect an *218 original domicile, but equally certainly do not prevent the establishment of a new or different one. While living and working in Japan, petitioner was a member of the "civilian component" within the meaning of that term as used in what is known as the Status of Forces Agreement between the United States and Japan governing the occupation of the latter country at the close of World War II. Article IX, section 2 thereof, is relied upon by petitioner to establish the fact that it was legally impossible for him to acquire a domicile in Japan. The section to which reference is made reads as follows: 2. Members of the United States armed forces shall be exempt from Japanese passport and visa laws and regulations. Members of the United States armed forces, the civilian component, and their dependents shall be exempt from Japanese laws and regulations on the registration and control of aliens, but shall not be considered as acquiring any right to permanent residence or domicile in the territories of Japan. We think petitioner's reliance is misplaced. Although petitioner, as an alien resident of Japan, may not under the agreement attain any right to a permanent residence and home in that *219 country as against the desire of the Government thereof, he is certainly not prevented from establishing a residence therein and making it his home for as long as the agreement is in force which would be an indefinite period. We find he has done just that on the basis of his own personal preference and not because of any compulsion. At some date in the future he may make his home in California but only in the event job opportunity so dictates. This is not the intention necessary to establish a domicile there. The evidence herein establishing the fact that while he was employed and living in Japan, petitioner, in effect, was residing in the United States is of no help to him for it is clear that he was not, during that period, domiciled in a community property state. The facts that his children and his wife spoke English, that the children attended American schools maintained by occupation forces, and that petitioner, upon two occasions, attended a Protestant church, while consistent with the fact that petitioner is a citizen of the United States who may someday make his home in this country, are not at all conclusive of *220 the proposition that he will do so. Petitioner's retention and use of various residence addresses in this country seems to us merely opportunistic and do not tend to establish any definite intention to make California his home. He at no time established a home at any of them but lived at each on a transient basis either while attending various schools or while visiting his relatives. In fact it is doubtful from the record that he ever resided at the address used by him as a voting residence in California. From the record as a whole we glean the strong impression that subsequent to his discharge from the armed forces petitioner has never felt himself to be affiliated with any particular state of the United States but rather as an affiliate of all of them collectively with a strong preference for living in Japan with the advantages accruing to him as a "civilian component" under the Status of Forces Agreement. Decision will be entered for the respondent.